**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**JAMES AREN DUCKETT,**

        *Plaintiff,*

v.

**SECRETARY, FLORIDA DEPARTMENT**
**OF CORRECTIONS, AND WARDEN,**
**FLORIDA STATE PRISON,**

        *Defendants.*

_____/

**CASE NO. 4:26-cv-354-TKW-MJF**
**ACTIVE DEATH WARRANT**
**Execution Scheduled for**
**July 28, 2026, 12:00 p.m.**

## RESPONSE TO MOTION FOR STAY OF EXECUTION

Nearly forty years after raping, strangling, and drowning eleven-year-old Teresa McAbee while on duty as a police officer, Duckett claims that Florida's lethal-injection protocol violates the Eighth Amendment's prohibition on cruel and unusual punishment as applied to him. That is so, Duckett says, because chemotherapy he underwent over a decade ago comprised his veins and put him at greater risk of vein-related complications during his execution.

Since Duckett filed suit just five days before his July 28, 2026, execution, he asks this Court to order the State to put off the execution

and give him more time to litigate his lethal-injection suit after holding a hearing on his motion to stay.

This Court should decline. Duckett inexcusably delayed and filed this suit five days before his execution despite having a death warrant hanging over his head since February 27, 2026. His claim that 2015 chemotherapy treatments compromised his veins does not warrant a stay at this late hour. Capital defense counsel should have known to evaluate any issues between his medical state and Florida's lethal injection protocol long before now, particularly given the February warrant.

Duckett also fails the most important stay element—substantial likelihood of success on the merits—four times over. Florida preclusion law, which Congress requires this Court to apply in this suit, bars his lethal-injection challenge because it could have been, but was not, raised alongside his other unsuccessful post-warrant claims in state court. He also failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act (PLRA) and failed to timely file suit under Florida's statute of limitations. On the merits, Duckett failed to state a factually plausible and legally viable Eighth Amendment claim given the well-established fact that etomidate will render him unconscious in less

2

than one minute.

Each of these insurmountable hurdles independently mean this Court's stay analysis can begin and end with substantial likelihood of success, but Duckett fails the rest of the stay test too. Duckett is not entitled to a stay, and this Court should not give him one.

## Background

The Florida Department of Corrections (FDC) incorporates the background from its contemporaneously filed Motion to Dismiss. This is FDC's response to Duckett's motion to stay his execution.

## Argument

**I.    Duckett's Motion for a Stay Should Be Denied Because He Fails the Stay of Execution Standard.**

This Court should deny Duckett's motion to stay his execution. It is well-settled that a stay of execution is not granted as "a matter of course." *Hill v. McDonough*, 547 U.S. 573, 583-84 (2006). A stay is "an equitable remedy" and "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.* at 584. There is a "strong equitable presumption against the grant of a stay where a claim could have been brought at such

a time as to allow consideration of the merits without requiring entry of a stay." *Nelson v. Campbell,* 541 U.S. 637, 650 (2004). Equity also requires this Court to consider "an inmate's attempt at manipulation." *Gomez v. U.S. Dist. Ct. for N. Dist. of Cal.,* 503 U.S. 653, 654 (1992).

"Both the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Calderon v. Thompson,* 523 U.S. 538, 556 (1998). The people of Florida, as well as the surviving victims, "deserve better" than the "excessive" delays that now typically occur in capital cases, including this one. *Bucklew v. Precythe,* 587 U.S. 119, 149 (2019). Courts must "police carefully" against last-minute claims used "to interpose unjustified delay." *Id* at 150. Last-minute stays of execution should be "the extreme exception, not the norm." *Id.* Duckett's dilatory conduct in bringing suit just days before his execution is reason enough to deny a stay on its own. *See Walls v. Sec'y, Dep't of Corr.,* 161 F.4th 1281, 1285 (11th Cir. 2025) ("Walls's admission that his suit could have been filed four months earlier dooms his motion")

Duckett must establish *at least* four elements to stay the execution of his long-finalized death sentence: "(1) he has a substantial likelihood of success on the merits, (2) he will suffer irreparable injury unless the

4

injunction issues, (3) the injunction would not substantially harm the other litigant, and (4) if issued, the injunction would not be adverse to the public interest." *Barwick v. Governor of Fla.*, 66 F.4th 896, 900 (11th Cir. 2023). But the Supreme Court has effectively modified this test and requires Duckett to show an additional two threshold elements: (5) that he has not pursued relief in dilatory fashion, and (6) his underlying suit is not based on a speculative theory. *See Bucklew*, 587 U.S. at 150-51. He must carry his "burden of persuasion" on all of these elements "by a clear showing" before this Court may stay his execution. *Hill*, 547 U.S. at 584.

This Court should refuse to stay the execution of Duckett's long-finalized death sentence for five reasons. First, he delayed filing suit until over four months after his death warrant issued and has engaged in an avalanche of piecemeal litigation since then. Second, Duckett's speculative lethal injection § 1983 suit does not have a substantial likelihood of success given the procedural and merits-based hurdles it faces. Third, a stay would substantially harm the State of Florida. Fourth, a stay would be adverse to the public interest. And fifth, given the proven nature of Florida's etomidate protocol, Duckett will not suffer irreparable harm.

### 1. Duckett Pursued Relief in Dilatory Fashion and Engaged in Piecemeal Litigation.

Duckett fails the first *Bucklew*-added element because he could have raised his lethal-injection challenge long before now. *Bucklew*, 587 U.S. at 150-51. "A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief." *Dunn v. Ray*, 586 U.S. 1138 (2019) (vacating a stay of execution entered where claims could have been brought earlier); *Dunn v. Price*, 587 U.S. 929, 929 (2019) (same). A capital defendant's use of piecemeal litigation is another dilatory tactic that weighs heavily against a stay. *See Gomez*, 503 U.S. at 654 (holding a capital defendant engaged in "last-minute attempts to manipulate the judicial process" by waiting to file § 1983 lethal-injection claims he could have raised in other litigation); *McGehee v. Hutchinson*, 854 F.3d 488, 491 (8th Cir. 2017) ("Whether or not the claim technically is barred by doctrine of res judicata or collateral estoppel, the prisoners' use of "piecemeal litigation" and dilatory tactics is sufficient reason by itself to deny a stay.")

Duckett's medical records prove this claim could have been raised years ago or alongside his other post-warrant challenges to execution in

state court. There is no reason this lethal-injection claim—dealing with damage to his veins caused by a 2015 chemotherapy treatment—could not have been raised back in March 2026 when Duckett filed his first post-warrant Florida Rule of Criminal Procedure 3.851 motion in state court. Instead, Duckett has filed no less than two post-warrant motions for substantive postconviction relief, one state habeas petition seeking substantive post-warrant relief, and three federal § 1983 suits.

The over four-month delay from just his February 27, 2026, death warrant until now in raising this method-of-execution claim requires this Court to deny the stay. *Walls*, 161 F.4th at 1285 ("Walls's admission that his suit could have been filed four months earlier dooms his motion"). A capital defendant with an active death warrant cannot wait over four months after the State schedules his execution date to investigate and file a 42 U.S.C. § 1983 lethal-injection claim. *See Dunn v. Ray*, 586 U.S. 1138, 1138 (2019) (vacating a stay of execution when a capital defendant waited 83 days after the claim ripened to file it). And Duckett's medical records prove he delayed far longer than that. *See Walls*, 161 F.4th at 1285 (expressing doubts that the suit could only have been filed four months ago given the inmate "suffered for at least eight years from the

7

same conditions he now alleges will cause him severe pain and suffering").

Likewise, Duckett's inexcusable and abusive use of piecemeal litigation also precludes a stay. *See Gomez*, 503 U.S. at 654; *McGehee*, 854 F.3d at 491. A capital defendant is not due multiple days in court litigating and relitigating claims. Duckett's decision to flood the federal courts with meritless suits five days before his execution after the Governor signed his death warrant back in February provides more than sufficient evidence of dilatory tactics that warrant denying a stay. The fact that at least two of those federal suits—this one and the one in the Middle District—are conclusively barred by 28 U.S.C. § 1738 under Florida preclusion law shows these suits are delay tactics too. *See Long v. Sec'y, Dep't of Corr.*, 924 F.3d 1171, 1179-80 (11th Cir. 2019) (holding 28 U.S.C. § 1738 precludes Florida capital defendants from relitigating claims already decided against them in state court or litigating new claims that could have been raised in the state court litigation).[1]

Duckett's dilatory pursuit of this lethal-injection claim and use of

---

[1] Duckett's complaint is modeled after the 2020 complaint filed in *Nance v. Oliver, et al*, 1:20-cv-107 (N.D. Ga.) (Doc.1). That further proves his dilatory tactics and delay filing this suit.

piecemeal litigation requires this Court to reject his motion to stay. *See Bucklew*, 587 U.S. at 151; *Long*, 924 F.3d at 1176-78 (denying a stay of execution where the capital defendant engaged in "inexcusable delay," which "is enough to deny him the equitable remedy of a stay"); *James v. Sec'y, Dep't of Corr.*, 130 F.4th 1291, 1296 (11th Cir. 2025) (indicating the equities were not on the side of a capital defendant who engaged in piecemeal litigation); *Mills v. Hamm*, 102 F.4th 1245, 1250 (11th Cir. 2024) ("Equity 'strongly disfavors inexcusable delay.'") (quoting *Woods v. Comm'r, Ala. Dep't of Corr.*, 951 F.3d 1288, 1293 (11th Cir. 2020)).

### 2. Duckett's Lethal Injection § 1983 Suit Does Not Have a Substantial Likelihood of Success.

Duckett also fails the "most important" stay element, so this Court's analysis can begin and end there. *Barwick v. Governor of Fla.*, 66 F.4th 896, 902 (11th Cir. 2023). As thoroughly explained in the State's accompanying motion to dismiss, this § 1983 litigation has no chance of success, much less the substantial likelihood needed for a stay, for four independently dispositive reasons.

**First**, Florida preclusion law bars Duckett's lethal injection § 1983 suit. Congress requires this Court to give the judgment rendered in

9

Plaintiff's post-warrant litigation in state court the same effect a Florida court would if Duckett filed his lethal injection challenge in state court. *See* 28 U.S.C. § 1738. Since the Florida Supreme Court would indisputably find the lethal injection claim barred when it could have been, but was not, raised with Duckett's other state postconviction claims after his warrant, this Court must dismiss it. *See Green v. Jefferson County Comm'n*, 563 F.3d 1243, 1253 (11th Cir. 2009) (the preclusion question is whether the State's highest court would find the claim precluded under state law); *Randolph v. State*, 422 So. 3d 166, 173 (Fla. 2025) (barring a post-warrant lethal-injection claim that could have been, but was not, raised in a prior postconviction motion).

Duckett created this preclusion problem by manipulating the judicial system and spreading his execution-related challenges across state and federal court. *See Lonchar v. Thomas*, 517 U.S. 314, 329 (1996) (explaining the abuse-of-the-writ doctrine would apply to bar the equitable relief of an execution stay despite 1983 litigation being the "proper vehicle" for a method-of-execution challenge). Once Duckett lost his post-warrant challenges in state court, Florida preclusion principles kicked in even before the Florida Supreme Court affirmed. *Meshulam v.*

10

*Gen. Motors Corp.*, 995 F.2d 192, 194 (11th Cir. 1993); *Tharpe v. Nationstar Mortgage LLC*, 718 Fed. Appx. 814, 817 (11th Cir. 2017). And federal courts are bound to state preclusion law when determining the preclusive effect of a state judgment. *Green v. Jefferson County Comm'n*, 563 F.3d 1243, 1253 (11th Cir. 2009) (citing 28 U.S.C. § 1738).

Because Duckett did not (but could have) raise his lethal-injection claim in his execution-related litigation in state court, those claims are now barred by Florida preclusion law, regardless of whether it would have been barred if Duckett raised it alongside his other post-warrant claims in state court. *Randolph*, 422 So. 3d at 173 (addressing a post-warrant Eighth Amendment lethal-injection claim and finding it barred because the claim could have been raised in a prior postconviction motion despite the defendant never raising a prior lethal-injection claim). Well-settled Florida Supreme Court precedent holds that a judgment denying a postconviction motion extinguishes all claims that "could have been" raised in that motion even if the claims themselves could be considered new. *E.g.*, *Gudinas v. State*, 412 So. 3d 701, 711-12 (Fla. 2025); *Bates v. State*, 416 So. 3d 312, 320 (Fla. 2025). The Eleventh Circuit has applied this facet of Florida preclusion law in the warrant context to bar § 1983

claims. *See Long v. Sec'y, Dep't of Corr.*, 924 F.3d 1171, 1179-80 (11th Cir. 2019) (holding "under Florida law, *res judicata* bars claims that Long could have raised in the" post-warrant "state postconviction proceedings but didn't").

Defendants do not dispute that 42 U.S.C. § 1983 is the proper vehicle to raise lethal-injection claims in federal court. That isn't the point or even a relevant question. The question is whether claims properly brought in § 1983 litigation are barred by 28 U.S.C. § 1738 when the state court would find the claims barred by a state court judgment that extinguished all claims that could have been raised in the state suit. The answer is yes. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982) (holding 28 U.S.C. § 1738 "commands a federal court to accept the rules chosen by the State from which the judgment is taken"). Such claims are barred. *Id.* And that state-law preclusion bar means Duckett cannot obtain a stay.

**Second**, Duckett failed to exhaust his administrative remedies as required by Congress. The PLRA, which applies to lethal injection § 1983 suits, requires Duckett to exhaust all administrative remedies before bringing this suit. *See* 42 U.S.C. § 1997e. But Duckett's complaint admits

12

he has only just begun the exhaustion process. (Doc.1:23.) His suit therefore has no substantial likelihood of success. *See Thorson v. Epps*, 701 F.3d 444, 445-46 (5th Cir. 2012) (affirming summary judgment on a lethal-injection claim that had not been properly exhausted under the PLRA).

**Third**, Florida's statute of limitations bars Duckett's untimely § 1983 suit. The core of his claim is that his chemotherapy treatment compromised his veins and put him at increased risk of complications from Florida's lethal injection protocol. But his medical records show his chemotherapy treatment occurred over a decade ago in 2015. Given that, at the absolute latest,[2] Duckett's claim accrued in 2017 when Florida adopted its current protocol that has remained materially unchanged since then. *See Randolph*, 422 So. 3d at 172 (explaining Florida's protocol

---

[2] FDC does not concede the switch to etomidate restarted the statute of limitations. *See Valle v. Singer,* 655 F.3d 1223, 1229-30 (11th Cir. 2011) (rejecting a capital litigant's claim that the statute of limitations had restarted based upon Florida's anesthetic change). However, since Plaintiff's complaint is barred by the statute of limitations using the later date of 2017 (adoption of etomidate), this Court need not decide that issue. *See Cooey v. Strickland,* 479 F.3d 412, 422 (6th Cir. 2007) ("We need not pinpoint the accrual date in this case, however, because even under the later date, 2001, Cooey's claim exceeds the two-year statute of limitations.").

has remained "essentially unchanged since 2017").

A reasonably prudent person would "inform himself of any impact his" 2015 chemotherapy treatment would have on his execution no later than when Florida adopted its current protocol in 2017. *See Nance v. Comm'r, Georgia Dep't of Corr.*, 59 F.4th 1149, 1153 (11th Cir. 2023). That renders his claim barred by the statute of limitations and no basis for federal relief. Duckett's remaining complaints about Florida's protocol could have been raised as early as 2017 and are therefore also barred by the statute of limitations. In particular, his challenge to central venous cannulation is completely untimely as those portions of the protocol have remained unchanged since 2017. (*See* Doc.1:13-14.) That defeats this whole claim because it means Florida has existing alternatives to deal with compromised veins which Duckett cannot assert violate the Eighth Amendment. *See Nance*, 59 F.4th at 1156-57 (finding an Eighth Amendment method-of-execution claim based on weak veins was insufficient because challenges to alternatives were not plausibly asserted).

**Fourth**, and finally, Duckett failed to raise a factually plausible and legally viable lethal injection claim. His complaint does not plausibly

14

establish a substantial and imminent risk of needless, and very likely, suffering. *See Glossip v. Gross*, 576 U.S. 863, 877-78 (2015). Instead, he relies on conclusory allegations, speculation, and threadbare recitations of his claims elements that are nowhere near enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Brewer v. Landrigan*, 562 U.S. 996, 996 (2010) (holding speculation does not demonstrate the requisite level of risk to succeed on a method-of-execution claim). *But see Nance*, 59 F.4th at 1156-57 (11th Cir. 2023) (finding the complaint Duckett modeled his current complaint out of largely sufficient).

This case has a critical difference from *Nance*, however. Duckett's medical records show that he was successfully anesthetized for a colonoscopy less than a year ago via a "GAUGE 22" needle in his left arm. That fact alone renders his complaint worthy of dismissal since it shows IV access in his arms, without complication, is highly likely. Duckett's contrary allegations are not substantially likely to prevail.

Under *Nance*, Duckett has also failed to plausibly allege central venous cannulation violates the Eighth Amendment. [3] His allegations are

---

[3] Venous access claims have long been held insufficient to support an Eighth Amendment challenge.  In *Baze v. Rees*, 553 U.S. 35, 55 (2008), the Court held that problems related to IV lines did not establish a

identical to those held insufficient in *Nance*. 59 F.4th at 1156-57; *Nance v. Oliver, et al*, 1:20-cv-107 (N.D. Ga.) (Doc.1). Indeed, his allegations appear word-for-word what the Eleventh Circuit held legally insufficient in *Nance*. All these pleading failures preclude a stay.

Duckett's claims cannot survive the pending motion to dismiss. But even if they might, that does not entitle him to a stay. On a motion to stay at this phase of the litigation "any doubts and uncertainties as to the sufficiency of his submission" are resolved against Duckett. *Sawyer v. Whitley*, 505 U.S. 333, 341 n.7 (1992) (creating this rule to prevent capital defendants from delaying "their filings until the last minute with a view to obtaining a stay because the district court will lack time to give them the necessary consideration before the scheduled execution"). So even if

---

sufficiently substantial risk of harm to meet the requirements of an Eighth Amendment claim. Likewise, the Eleventh Circuit has squarely rejected Eighth Amendment claims that repeated IV access attempts can constitute superadded pain and present a "substantial risk of harm." *See Barber v. Governor of Alabama*, 73 F.4th 1306, 1318 (11th Cir. 2023) (finding death row inmate's arguments "fatal[ly] flaw[ed]" because they were "premised on the assumption that protracted efforts to obtain IV access" would cause an unconstitutional level of pain); *Nance v. Comm'r, Georgia Dep't of Corr.,* 59 F.4th 1149, 1157 (11th Cir. 2023) (rejecting claim that state technicians would subject death row inmate to an unconstitutional level of pain by repeatedly pricking him with a needle due to his weak veins).

this Court doubts whether these arguments would prevail on a Motion to Dismiss, they are more than enough to show Duckett is not substantially likely to prevail at the end of this suit if fully litigated to a conclusion. That precludes a stay.

Given the numerous failures in Duckett's Eighth Amendment challenge to Florida's lethal injection protocol, it is exactly the type of "speculative" suit the Supreme Court has instructed federal courts to "dismiss or curtail." *See Bucklew*, 587 U.S. at 151. It is certainly not the "extreme exception" warranting a "last-minute stay." *See id.* at 150.

### 3. A Stay Will Substantially Harm the State of Florida.

Duckett has also failed to demonstrate that a stay will not substantially harm the State of Florida. Florida will be substantially harmed by a federal court interfering with its sovereign power to enforce its valid criminal judgment by delaying a scheduled execution for a 1987 murder after years of review. *In re Blodgett*, 502 U.S. 236, 239 (1992) (noting the "severe prejudice" from a stay of execution which prevented the State "from exercising its sovereign power to enforce the criminal law"); *Bucklew*, 587 U.S. at 149. The people of Florida, as well as the surviving victims, "deserve better" than the "excessive" delays that

17

typically occur in capital cases. *Id.*

The Eleventh Circuit has also repeatedly noted a state's strong interest in carrying out an execution without a stay and rejected the argument that "the state will only suffer a minimal inconvenience" from a stay. *Bowles v. DeSantis*, 934 F.3d 1230, 1247 (11th Cir. 2019) (cleaned up); *Long v. Sec'y, Dep't of Corr.*, 924 F.3d 1171, 1176 (11th Cir. 2019); *Brooks v. Warden*, 810 F.3d 812, 824 (11th Cir. 2016); *Jones v. Comm'r, Ga. Dep't of Corr.*, 811 F.3d 1288, 1296 (11th Cir. 2016) (denying a stay of execution and noting the "State's strong interest in enforcing its criminal judgments without undue interference from the federal courts").

A stay from this Court would—for its duration—commute Duckett's death sentence to the life sentence for a murder that occurred over thirty years ago. *See Bowles*, 934 F.3d at 1248. True finality—which in capital cases means carrying out a death sentence—is "essential to both the retributive and the deterrent functions of criminal law." *See Calderon v. Thompson*, 523 U.S. 538, 554 (1998).

The State's interests in carrying out a death sentence as scheduled and as planned are high in a case like this one where a warrant has been signed and an execution has been scheduled. Its interest in carrying out

an execution via its chosen, well-established, and proven protocol does not decrease merely because a capital defendant speculates that he will suffer a torturous death.

It bears pointing out that Duckett's current lethal injection challenge—according to him—accrued based on health issues he developed over the decades he spent challenging his death sentence. Capital defendants cannot simultaneously argue that their sentences must receive decades of review only to then, on the eve of execution, turn around and argue medical conditions they developed over the decades they demanded to litigate their death sentences mean the State must switch to an untested and untried execution method.

Given the State's strong interest in enforcement of criminal law without federal interference, the retributive and deterrent rationales for the death penalty, and the fact that Duckett's medical condition deteriorated while he spent decades litigating his death sentence, a stay will substantially harm the State. Duckett is not, therefore, entitled to a stay. *Bowles v. DeSantis*, 934 F.3d 1230, 1246 (11th Cir. 2019) (capital defendants seeking a stay of execution "must satisfy <u>all</u> of the requirements for a stay") (quoting *Hill v. McDonough*, 547 U.S. 573, 584

19

(2006) with emphasis).

### 4. A Stay Is Not in the Public Interest.

It is also not in the public interest to stay Duckett's execution so he can litigate his lethal injection § 1983 challenge. Florida has a proven track record of executions with its current lethal injection protocol. Florida has successfully implemented its etomidate protocol over forty times since its adoption in 2017. *See* Florida Department of Corrections, https://www.fdc.myflorida.com/institutions/death-row/execution-list-1976-present (last accessed Jul. 24, 2026). *See also Barr v. Lee*, 591 U.S. 979, 980 (2020) (denying a stay based in part on the number of successful executions). The public interest is not served by staying an execution given Florida's proven track record of successful and quick executions.

In Duckett's case, the public interest lies with the "powerful and legitimate interest in punishing the guilty" after one round of state and federal review of a conviction and sentence have run their course. *See Calderon*, 523 U.S. at 556. That point is further reinforced by the fact Duckett's health allegedly deteriorated over the decades he spent trying to overturn and delay execution of his death sentence. The public interest does not lie with a capital defendant who spends decades delaying his

death sentence and then claims medical issues developed over those years render his execution cruel and unusual. *Cf. Glossip v. Gross*, 576 U.S. 863, 898 (2015) (Scalia, J., concurring) ("Invocation of the resultant delay as grounds for abolishing the death penalty calls to mind the man sentenced to death for killing his parents, who pleads for mercy on the ground that he is an orphan.").

Duckett has litigated an avalanche of postconviction claims over the past decades, and his current alleged medical situation resulted from taking advantage of every opportunity to delay execution of his death sentence before. The public interest is not served at all by merely granting him delay to litigate Florida's lethal injection protocol, which the Florida Supreme Court has repeatedly deemed constitutional.

## 5. Duckett Will Not Suffer Irreparable Harm Absent a Stay.

Preventing Duckett from fully litigating his method-of-execution challenge to Florida's tried and true execution protocol will not result in irreparable harm. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (rejecting the Ninth Circuit's mere "possibility" standard as too lenient to establish irreparable harm); *Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022) (explaining the

"party seeking a preliminary injunction must establish it is likely to suffer irreparable harm without an injunction" and the "mere possibility or speculation of harm is insufficient").

Florida has executed over forty inmates under this exact protocol, which has worked quickly and efficiently each time. *Cf. Barber v. Ivey*, 143 S. Ct. 2545, 2545-46 (2023) (Sotomayor, J., dissenting) (dissenting from the Court's refusal to stay an execution despite the fact that, in two recently preceding executions, Alabama officials "spent multiple hours digging for prisoners' veins in an attempt to set IV lines" and could not carry out the execution); *Smith v. Hamm*, 144 S. Ct. 414, 414 (2024) (Sotomayor, J., dissenting) (dissenting from the Court's refusal to stay an execution despite the fact that Alabama failed to execute this inmate once before and was attempting a novel nitrogen hypoxia method this time).

Further, he was successfully anesthetized for a colonoscopy less than a year ago via a "GAUGE 22" needle in his left arm. There is no reason to think his execution would proceed any differently. The massive dose of etomidate required by Florida's protocol, combined with the mandatory consciousness checks, will ensure Duckett is "fully insensate" before the execution continues and any pulmonary edema occurs. *Cf.*

*Barr v. Lee*, 591 U.S. 979, 981 (2020) (vacating a stay based on testimony that any "flash pulmonary edema" would occur after "the prisoner has died or been rendered fully insensate").

Duckett's stay motion fails to establish he would likely suffer irreparable harm without a stay to litigate his current suit, which has no substantial likelihood of success anyway due to three separate procedural hurdles and a thorough evaluation of its lacking merit. As a result, he fails this stay element as well.

## Conclusion

This Court should deny Duckett's motion to stay.

Respectfully submitted,

JAMES UTHMEIER
*Florida Attorney General*

/s/ *Jason W. Rodriguez*
JASON W. RODRIGUEZ*
COUNSEL OF RECORD
*Senior Assistant Attorney General*
Florida Bar No.125285
jason.rodriguez@myfloridalegal.com
capapp@myfloridalegal.com
Phone: (850) 414-3661

PL-01, The Capitol
Tallahassee, FL 32399-1050
capapp@myfloridalegal.com

23

Phone: (850) 414-3300

COUNSEL FOR DEFENDANTS

## **CERTIFICATE OF WORD COUNT**

This Response contains 4,596 words in compliance with the 8,000-word limitation set out in local rule 7.1(F).

## **CERTIFICATE OF SERVICE**

On this 24th day of July 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **Mary Elizabeth Wells**, Law Office of M.E. Wells, LLC, 623 Grant St. SE, Atlanta, GA, 30312-3146, phone: (404) 408-2180; email: mewells27@comcast.net; **Brittney N. Lacy**, CCRC-South, 110 SE 6th St., Suite 701, Ft. Lauderdale, FL, 33303-5001; phone: (954) 713-1284; email: lacyb@ccsr.state.fl.us; **Courtney M. Hammer**, CCRC-South, 110 SE 6th St., Suite 701, Ft. Lauderdale, FL, 33303-5001; phone: (954) 713-1284; email: hammerc@ccsr.state.fl.us.

/s/ *Jason W. Rodriguez*
JASON W. RODRIGUEZ
SR. ASSISTANT ATTORNEY
GENERAL

24