UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAMES AREN DUCKETT,

      Plaintiff,

v.                                    **Case No. 4:26-cv-354-TKW-MJF**

RICHARD COMERFORD and
RANDALL POLK,

      Defendants.

_____/

## ORDER DENYING STAY OF EXECUTION

Plaintiff is a death-sentenced inmate under an active death warrant.  His execution is scheduled for next Tuesday, July 28, at noon.[1]

On July 23, about 2:30 p.m., Plaintiff filed a complaint against the Secretary of the Florida Department of Corrections and the warden of the facility where he is incarcerated (collectively, "the State") under 42 U.S.C. §1983 alleging that the State's lethal injection protocol is unconstitutional as applied to him.  He also moved for a stay of execution pending disposition of his constitutional claim.

---

[1]  The execution was originally scheduled for March 31, but the Florida Supreme Court stayed the execution on March 26.  *See Duckett v. State*, 428 So.3d 40 (Fla. 2026).  The stay was lifted on July 8, *see Duckett v. State*, 2026 WL 1970442 (Fla. July 8, 2026), and on July 14, the execution was rescheduled for its current date.

The motion to stay is fully briefed.[2]  Oral argument is not needed to rule on the motion.  Thus, the motion is ripe for resolution.

The Court may only grant a stay of execution if the inmate "establishes that (1) he has a substantial likelihood of success on the merits, (2) he will suffer irreparable injury unless the injunction issues, (3) the injunction would not substantially harm the other litigant, and (4) if issued, the injunction would not be adverse to the public interest." *Barwick v. Governor of Fla.*, 66 F.4th 896, 900 (11th Cir. 2023).  The Court must also consider "the extent to which the inmate has delayed unnecessarily in bringing the claim," *Walls v. Sec'y, Dep't of Corr.*, 161 F.4th 1281, 1284 (11th Cir. 2025) (quoting *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004)), because "[l]ast-minute stays should be the extreme exception, not the norm, and 'the last-minute nature of an application' that 'could have been brought' earlier … 'may be grounds for denial of a stay.'" *Bucklew v. Precythe*, 587 U.S. 119, 150 (2019) (quoting *Hill v. McDonough*, 547 U.S. 573, 584 (2006)).

Here, the State argues that the motion for a stay of execution should be denied because Plaintiff unduly delayed in bringing his §1983 claim until five days before his execution date.  The Court agrees.

---

[2]  The Court established an expedited briefing schedule on the motion, *see* Doc. 7, and the State timely filed a response in opposition to the motion, *see* Doc. 15.  Plaintiff did not file a reply to the State's response despite being given an opportunity to do so.  *See* Doc. 16 at 11 (stating that Plaintiff was going to rely on his motion in response to the arguments in the State's response).

The basis of Plaintiff's claim—that he has "severely compromised" veins because of his prior chemotherapy treatment—is something that Plaintiff knew or could have discovered with due diligence long before now since he last received chemotherapy more than a decade ago.[3]  Additionally, the circumstances giving rise to the claim asserted in the complaint existed when Plaintiff's death warrant was originally signed nearly five months ago, and there is no reason why Plaintiff could not have brought the claim then.[4]  Finally, at the latest, Plaintiff could have brought the claim two weeks sooner than he did when the Florida Supreme Court lifted the stay of execution on July 8.

The balance of equities weigh strongly against Plaintiff under the circumstances.  *See, e.g.*, *Long v. Sec'y, Dep't of Corr.*, 924 F.3d 1171, 1178 (11th Cir. 2019) (citing multiple cases denying stays of execution where inmate delayed filing a §1983 action until shortly before his execution); *see also Walls*, 161 F.4th at 1283–86 (finding no abuse of discretion in district court's denial of motion to stay

---

[3] The Court did not overlook Plaintiff's argument that "he had no way of knowing the relevance of his medical history" until July 20 when an unnamed prisoner official informed him that "chemotherapy 'really messes up the veins,'" but that argument is not persuasive because even if Plaintiff did not fully appreciate the potential effects of chemotherapy on his veins before July 20 (and the Court is dubious of that claim), the underlying medical condition is not new.  *See Walls*, 161 F.4th at 1287 (expressing doubt as to plaintiff's argument that his delay in filing suit should be measured from the discovery of a "significant change in his medical conditions" when he suffered from the same underlying condition for eight years).  Moreover, the medical records submitted by the State with its response appear to refute Plaintiff's claim that his veins are "severely compromised" because no abnormal cardiovascular issues were noted during his February 2025 physical, *see* Doc. 13 at 3, and he received intravenous (IV) anesthesia in his left arm during a November 2025 colonoscopy without any noted problems, *id.* at 4–5.

execution when "risks to [plaintiff] from lethal injection protocol were apparent for years" and plaintiff "delay[ed] in seeking a stay of execution until over two weeks after his death warrant was signed"). Moreover, at this point—nearly 40 years after the murder that put Plaintiff on death row[5] and 35 years after his conviction and sentence became final—the State and the public have a strong interest in Plaintiff's execution proceeding as scheduled. *See Hill*, 547 U.S. at 584 (explaining that the state has "strong interest in enforcing its criminal judgments without undue interference from the federal courts").

In addition to undue delay, Plaintiff has not shown a likelihood of success on the merits of his constitutional claim because the Eleventh Circuit has repeatedly rejected the proposition that repeated or protracted attempts to locate a suitable vein constitutes an Eighth Amendment violation. For example, in *Nance v. Commissioner, Georgia Department of Corrections*, the Eleventh Circuit stated that the district court's correctly rejected an inmate's argument that the execution team would have trouble accessing his "weak veins" and "subject him to an unconstitutional level of pain by repeatedly pricking him with a needle" because "the Eighth Amendment does not guarantee a prisoner a painless death, but rather it forbids the use of long disused (unusual) forms of punishment that intensified the

---

[5] Plaintiff raped and killed an 11-year-old girl in 1987 while he was working as a local police officer. *See Duckett v. State*, 568 So. 2d 891, 892–94 (Fla. 1990).

4

sentence of death with a (cruel) superaddition of terror, pain, or disgrace." 59 F.4th 1149, 1157 (11th Cir. 2023). Likewise, in *Barber v. Governor of Alabama*, the Eleventh Circuit rejected the inmate's argument that he would endure "needless suffering" during any prolonged attempt to establish IV access through his veins due to his "individual risk factors" because that argument "suffer[ed] from a fatal flaw" of assuming that "protracted efforts to obtain IV access (*i.e.,* 'repeatedly pricking him with a needle') would give rise to an unconstitutional level of pain." 73 F.4th 1306, 1319 (11th Cir. 2023) (citing *Nance*).

Plaintiff's §1983 claim suffers from the same flaw. The claim is premised on the assertion because of his "history with chemotherapy, venal access will likely require multiple painful needle insertions and blind attempts by the IV team to locate the two required suitable veins"—an allegation for which Plaintiff provides no medical documentation and he seeks to bolster with a statement of an unidentified prison official who, after allegedly having "difficulty" finding a vein on Plaintiff's arm, simply told him that "chemotherapy 'really messes up the veins.'" Notably, however, the complaint does not allege that the official was actually unable to find a suitable vein (or that he believed that the execution team would not be able to do so) and it merely speculates about what *might* happen during the execution if a suitable vein is not located in Plaintiff's arm or elsewhere on his body. That is not enough to show a likelihood of success on the Eighth Amendment claim asserted in

5

the complaint, particularly where Plaintiff's medical records show no issues accessing Plaintiff's veins for an IV as recently as November 2025. *See Nance v. Comm'r, Ga. Dep't of Corr.*, 169 F.4th at 1312, 1318 (11th Cir. 2026) (rejecting inmate's claim that his medical condition created individualized risks that would complicate IV access to his veins where "[m]edical professionals obtained peripheral access to [plaintiff's] veins three times less than two and a half years before the trial, and the medical records reveal no complications in either obtaining intravenous access or delivering a steady flow of fluids into his vein"); *Barber*, 73 F.4th at 1321 (rejecting inmate's claim that his medical condition created individualized risks that would complicate IV access to his veins based where prison officials had no issues accessing his veins on all but a few prior occasions).

\* \* \*

Plaintiff earned his death sentence, and at this point, justice for the victim of his crime and her family and friends has been delayed long enough. The speculative, last-minute §1983 claim raised in the complaint does not come close to justifying a further delay. Accordingly, it is

**ORDERED** that Plaintiff's motion for a stay of execution (Doc. 4) is **DENIED**.

6

**DONE and ORDERED** this 24th day of July, 2026.

_____
**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**